IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CR-21-275-RAW |
| | ) |
| TROY ALLEN STEVENSON, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Before the court is the defendant's motion *in limine* to exclude government's expert witnesses and request for *Daubert* hearing.[1] Defendant challenges four witnesses: (1) John B.H. Webb; (2) Jarred Michalski, M.D.; (3) Ryan Woolley; and (4) Dr. Shawn Roberson.

Convening a *Daubert* hearing is within the court's discretion. *United States v. Woods,* 2022 WL 989477 n.1 (N.D.Okla.2022)(citing *Goebel v. Denver & Rio Grande W.R.R. Co.,* 215 F.3d 1083, 1087 (10th Cir.2000)). Rule 702 F.R.Evid. (as interpreted in *Daubert*) requires a district court to satisfy itself that the proposed expert testimony is both *reliable* and *relevant* before permitting the jury to assess such testimony. *United States v. Wofford,* 766 Fed.Appx. 576, 581 (10th Cir.2019). Reliability is about the reasoning and methodology underlying the expert's opinion. Relevance is about whether the expert testimony will assist

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

the trier of fact or whether it instead falls within the juror's common knowledge and experience and will usurp the juror's role of evaluating a witness's credibility. *Id.*

Non-exclusive factors for reliability are: (1) can and has the theory been tested; (2) has it been peer reviewed; (3) does it have a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; (5) does it have widespread acceptance within the relevant scientific community. *Daubert,* 509 U.S. at 593-94.

Non-exclusive factors to determine whether the testimony will assist the trier of fact are: (1) is the testimony relevant; (2) is it within the juror's common knowledge and experience; (3) is there a sufficient factual basis and reliable application of methodology to facts; (4) will it usurp juror's role of evaluating a witness's credibility.

To perform its gatekeeping role, the district court must make specific findings on the record so that the appellate court can determine if it carefully reviewed the objected-to expert testimony under the correct standard. *Tudor v. Southeastern Okla. St. Univ.,* 13 F.4th 1019, 1029 (10th Cir.2021). *See also United States v. Cushing,* 10 F.4th 1055, 1079 (10th Cir.2021). The government's burden is preponderance of the evidence. *Daubert,* 509 U.S. at 592 n.10.

Webb is a Supervisory Firearms Examiner with the Firearms/Toolmarks Unit of the FBI Laboratory located at Quantico, Virginia. (#96 at 3). The government proposes to have him testify regarding the firearm used in the litigated events and that the shells came from

that firearm. Defendant does not raise specific objections as to Webb's credentials,[2] but states that (1) his testimony would not be helpful to the jury because it does not go to any issue in the case, in that defendant does not deny shooting the decedent [asserting self-defense], and (2) the matching of bullets to guns (pattern comparison) is completely subjective.

The court finds Webb is adequately qualified to testify. He has spent 22 years conducting firearms examinations and has testified approximately 61 times in federal and state court. (#56-1). In the decision cited by the government, *United States v. Hunt,* 464 F.Supp. 3d 1252 (W.D. Okla.2020), Judge Russell made detailed findings as to "the Association of Firearms and Toolmark Examiners (AFTE) method". *Id.* at 1256. As to firearm toolmark identification in general, he quoted cases that its use was "hardly novel" and that admission has been "semi-automatic." *Id.* The *Hunt* court denied the motion without conducting a formal hearing.

The *Hunt* court, however, noted limitations implicated by "recent guidance from the Department of Justice." *Id.* at 1261. Webb's report states in conclusory fashion that it conforms to the Department of Justice Uniform Language for Testimony and Reports for the

---

[2]Defendant states in conclusory fashion: "The government has . . . [not] shown that its experts are qualified to testify. . . ." (#97 at 4). Further, "[e]ven if the government can show that Mr. Webb is qualified and that the field of ballistics is reliable, which the defendant disputes *and would demonstrate at the hearing*, . . . ." (#111 at 3)(emphasis added). The purpose of a "*Daubert* motion" is to make at least a *prima facie* (i.e., more than boilerplate) objection to enable the court to exercise its discretion properly as to whether a hearing should be held. Defendant seeking to reserve its specific objections until the hearing itself defeats that purpose. *Cf. United States v. Scarpon,* 2006 WL 5100541 (S.D.Fla.2006).

Forensic Firearms/Toolmarks Discipline - Pattern Examinations (#96-2 at 4), which is the guidance referred to by the *Hunt* court. More specifically, the *Hunt* court held that experts in this area shall not (1) assert that two toolmarks originated from the same source to the exclusion of all other sources [it is not clear if this is applicable in the case at bar, where the weapon is in the possession of the government]; (2) assert that examinations conducted in the forensic firearms/toolmarks discipline are infallible or have a zero error rate; (3) provide a conclusion that includes a statistic or numerical degree of probability except when based on relevant and appropriate data; (4) cite the number of examinations conducted in the forensic firearms/toolmarks discipline performed in his or her career as a direct measure for the accuracy of a proffered conclusion; (5) use the expressions "reasonable degree of scientific certainty," "reasonable scientific certainty," or similar assertions of reasonable certainty in either reports or testimony unless required to do so by the court or applicable law. *Id.* at 1262. The *Hunt* court did permit the government's experts to testify that their conclusions were reached to a "reasonable degree of ballistic certainty, a reasonable degree of certainty in the field of firearm toolmark identification, or any other version of that standard." *Id.* This court adopts the *Hunt* court's findings and limitations. Defendant's attack on the testimony may be presented in cross-examination.

Proposed witness Jarred Michalski, M.D., is a Staff Forensic Pathologist with Oklahoma's Office of the Chief Medical Examiner. (#56 at 2).[3] The government proposes

---

[3] He is qualified to testify on the subject matter (*See* #56-2).

to have him testify that the manner of death in this case is "homicide." Defendant's objection is not actually a *Daubert* objection. Rather, he objects that such testimony is unnecessary and unduly prejudicial. The court is not persuaded at this time but will entertain argument at the pretrial conference. No *Daubert* hearing is necessary on this point.

Ryan Wooley is Special Agent, Crime Scene Investigator, Oklahoma State Bureau of Investigation (#56 at 4).[4] The government proposes to have him testify regarding blood spatter analysis. Again, defendant argues not on *Daubert* grounds, but that such testimony is irrelevant and does not address any issue in the case (#97 at 5). The government contends that the testimony is directly relevant to whether defendant shot his father in the head while his father was on the floor, which in turn is relevant to malice and specific intent. The court agrees at this time. In any event, the government has cited court decisions permitting expert blood spatter analysis. Defendant of course may challenge the weight of the testimony through cross-examination.

Finally, the defendant challenges Shawn Roberson, the government's expert whom the court allowed the government to secure pursuant to Rule 12.2(c)(1)(B) F.R.Cr.P. The motion does not challenge Roberson's credentials or methodology, except to state that his "report is unreliable because it appears to not be objective." (#97). This is insufficient to require a *Daubert* hearing. The witness's credentials are more than adequate (#80-1) and the

---

[4] He is qualified to testify regarding the subject matter (*See* #56-3).

field of psychology is well-established.  The report (#80-1) is detailed. Testimony regarding PTSD has been accepted in many courts.

Defendant also objects that Roberson should be precluded from repeating any statements elicited from the defendant during the evaluation.  Rule 12.2(c)(4)(A) prohibits the admission of such statements "except on an issue regarding mental condition on which the defendant has introduced evidence . . . requiring notice under Rule [12.2(b)(1)]," as in the case at bar.  The government indicates that Roberson will be only a rebuttal witness, addressing the testimony of defendant's expert.  At the appropriate time, the government should preliminarily advise the court and defense counsel which (if any) statements of the defendant will be referenced.

It is the order of the court that the motion of the defendant (#97) is hereby denied.

**ORDERED THIS 21ˢᵗ DAY OF SEPTEMBER, 2022.**

_____
**RONALD A. WHITE
UNITED STATES DISTRICT JUDGE**